FILED

2016 JUL -1 PM 2:52

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

March 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY R. SPANIER, <br><br> Defendant. | Case No. **16CR1545BEN** <br><br> I N D I C T M E N T <br><br> Title 18, U.S.C., Sec. 371 - Conspiracy; Title 18, U.S.C., Sec. 1341 - Mail Fraud; Title 18, U.S.C., Sec. 1343 - Wire Fraud; Title 15, U.S.C., Secs. 78j(b) and 78ff - Securities Fraud; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Secs. 981(a)(1)(C), 984, and Title 28, U.S.C., Sec. 2461(c) - Criminal Forfeiture |

The Grand Jury charges:

### INTRODUCTORY ALLEGATIONS

At all times material to this Indictment

1. Defendant JEFFREY R. SPANIER was a resident of Delray Beach, Florida.

2. Amerifund Capital Finance, LLC ("ACF") was a corporation formed under the laws of the State of Florida and was owned and controlled by defendant JEFFREY R. SPANIER.

//

MGW:nlv(1):San Diego
7/1/16

3. Amerifund Capital Group, LLC ("ACG") was a corporation formed under the laws of the State of Florida and was owned and controlled by defendant JEFFREY R. SPANIER.

4. ACF and ACG purported to operate a stock lending business that specialized in originating stock loans for business executives. Defendant JEFFREY R. SPANIER, represented to the public that ACF and ACG were direct lenders, and also served as the "retail" arm of other lenders, including but not limited to, Argyll Equities, LLC, SW Argyll Investments, LLC, Ayuda Funding, LLC, and Amerifund Capital Holdings, LLC.

5. Argyll Equities, LLC was a corporation formed under the laws of the State of Texas and purported to do business in San Diego, California and Savannah, Georgia. Its principals were James T. Miceli (now deceased) (hereinafter referred to as "Miceli") and Douglas McClain, Jr., charged elsewhere, (hereinafter referred to as "McClain, Jr.")

6. SW Argyll Investments, LLC was a corporation formed under the laws of the State of Texas and purported to do business in San Diego, California and Savannah, Georgia. Its principals were Miceli and McClain, Jr.

7. The Argyll entities referred to in paragraphs 5 through 6 (hereinafter, collectively referred to as "ARGYLL"), were represented to the public by defendant JEFFREY R. SPANIER, and others, to be an institutional lender with significant assets that were in the business of making loans to corporate executives and other individuals and which would accept stock (either restricted or unrestricted) as collateral for the loans ARGYLL made.

2

## Count 1

[18 U.S.C. § 371]

Conspiracy

8. The allegations set forth in paragraphs 1 through 7 above are realleged and incorporated by reference as if fully set forth herein.

9. Beginning in at least February 2003 and continuing up to and including October 25, 2013, within the Southern District of California and elsewhere, defendant JEFFREY R. SPANIER, James T. Miceli (now deceased), and Douglas McClain, Jr., charged elsewhere, and other co-conspirators, knowingly conspired and agreed with each other, and persons known and unknown to the grand jury, to commit offenses against the United States, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and securities fraud, in violation of Title 15, United States Code, Sections 78j and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

10. It was the purpose and object of the conspiracy to devise a scheme and artifice to defraud and obtain money from borrowers and clients of ACF and ACG by means of false, fraudulent and material pretenses, representations, promises and omissions of material fact.

### Methods and Means by Which Objects of the Conspiracy Were to be Accomplished

11. In furtherance of the conspiracy and to effect the objects thereof, defendant JEFFREY R. SPANIER utilized the following methods and means, among others:

//

a.   Defendant JEFFREY R. SPANIER, and others, would induce potential borrowers to pledge stock the borrowers owned in publicly traded securities as collateral for loans by false, fraudulent, and misleading representations that ARGYLL, and other lenders, had substantial independent sources of cash to lend.

b.   Defendant JEFFREY R. SPANIER, and others, would induce potential borrowers to pledge stock the borrowers owned in publicly traded securities as collateral for loans by false, fraudulent, and misleading representations that their stock would be held in safekeeping and not be sold unless the borrower defaulted on the loan.

c.   Defendant JEFFREY R. SPANIER, and others, would induce borrowers to execute documents transferring shares the borrowers owned in publicly traded securities to ARGYLL, and other lenders, by making false, fraudulent, and misleading representations that ARGYLL, and other lenders, would abide by all securities laws, including Rule 144 which restricts affiliated persons from selling publicly traded securities outside of certain guidelines and reporting requirements.

d.   Defendant JEFFREY R. SPANIER, would induce borrowers to execute documents transferring shares the borrowers owned in publicly traded securities to ARGYLL by falsely representing that he was only receiving as much as 5% in fees, when, in truth and fact, he was receiving substantial incentive fees which exceeded 5%.

e.   Defendant JEFFREY R. SPANIER, and others, would induce borrowers to make quarterly interest payments on loans ARGYLL purportedly made by falsely representing that the stock they pledged as collateral for the loans was safe and would be returned to them as long as they continued to make all of their interest payments timely.

4

OVERT ACTS

12. In furtherance of said conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

    a. Between February 1, 2003 and January 29, 2004, JEFFREY R. SPANIER negotiated four loan agreements with borrower PB in which PB pledged 1,250,000 shares of common stock PB held in ATP Oil and Gas Corporation, a publicly traded company listed on the National Association of Securities Dealers Automated Quotation System ("NASDAQ"), as collateral for four loans totaling $3,277,750 from ARGYLL.

    b. On or before February 27, 2004, JEFFREY R. SPANIER negotiated a loan agreement with borrower GS in which GS pledged 500,000 shares of common stock GS held in ATP Oil and Gas Corporation, a publicly traded company listed on NASDAQ, as collateral for a $1.5 million loan from ARGYLL.

    c. On or before April 20, 2004, JEFFREY R. SPANIER negotiated a loan agreement with borrower LP in which LP pledged 1.19 million shares of common stock LP held in Mace Security International, Inc. ("MSI"), a publicly traded company listed on the NASDAQ, as collateral for a $4.1 million loan from ARGYLL.

    d. Between June 2004 and December 2005, JEFFREY R. SPANIER facilitated the execution of 14 loan agreements with Servicios Directivos Servia S.A. de C.V. ("SDS") in which SDS pledged a total of 14,178,193 publicly traded American Depository Receipts of Grupo TMM S.A. de C.V. ("TMM") as collateral for loans totaling $23,157,078.

e. On or before December 16, 2008, JEFFREY R. SPANIER requested that borrower JC pay off a loan that JC obtained from ARGYLL in the amount of $3,462,500.

f. On or about May 8, 2009, JEFFREY R. SPANIER sent an e-mail to JC in which he assured JC that stock he had pledged for his loan would be returned to him.

g. On or before May 22, 2009, JEFFREY R. SPANIER negotiated a loan agreement with borrower RS in which RS pledged 1,000,000 shares of common stock RS held in Vu1 Corporation ("VU1"), a publicly traded company listed on the Over The Counter Bulletin Board ("OTCBB"), to Amerifund Capital Holdings, LLC.

h. On or about September 29, 2009, JEFFREY R. SPANIER caused borrower DA to execute a loan agreement in which DA pledged 1 million shares of common stock DA held in Provectus Pharmaceuticals, Inc. ("PVCT").

i. On or before December 1, 2009, JEFFREY R. SPANIER negotiated a loan agreement with borrower SW in which SW pledged 700,000 shares of common stock that SW owned in Diversified Developers Realty ("DDR"), a publicly traded company on the New York Stock Exchange ("NYSE"), as collateral for a $4.3 million loan from ARGYLL.

j. On or about December 10, 2009, JEFFREY R. SPANIER caused a wire transfer in the amount of $410,977 to be sent to him of which $273,480 was a back end fee that was not disclosed to SW prior to executing the loan agreement with ARGYLL.

k. On or before March 4, 2010, JEFFREY R. SPANIER negotiated a loan agreement with borrower KY in which KY pledged 1 million shares of common stock KY held in China Armco Metals, Inc.

("CNAM"), a publicly traded company on the NYSE, as collateral for a $4.68 million loan from ARGYLL.

l. On or before April 22, 2010, JEFFREY R. SPANIER negotiated a loan agreement with borrower TP in which TP pledged 500,000 shares of common stock TP held in Searchlight Minerals, Inc. ("SM"), a publicly traded company listed on the OTCBB, as collateral for a $270,000 loan from ARGYLL.

m. On or before February 18, 2011, JEFFREY R. SPANIER negotiated a loan agreement with borrower FB in which FB pledged 52,246 shares of common stock that FB held in First PacTrust Bancorp, Inc. ("FPTB"), a publicly traded company listed on the NASDAQ, as collateral in exchange for a $557,726.05 loan from ARGYLL.

n. On or before March 15, 2011, JEFFREY R. SPANIER negotiated a loan agreement with borrower RS in which RS pledged 750,000 shares of common stock RS held in VU1 Corporation ("VU1"), a publicly traded company listed on the OTCBB, as collateral for a $207,900 loan from ARGYLL.

o. On or about March 30, 2011, JEFFREY R. SPANIER received a wire transfer in the amount of $38,244.07 of which $15,935.03 was a back-end fee for the FB loan which was not disclosed to FB prior to executing the loan agreement.

p. On or about March 30, 2011, JEFFREY R. SPANIER received a wire transfer in the amount of $26,895 of which $16,500 was a back-end fee for the RS loan which was not disclosed to RS prior to executing the loan agreement.

q. On or before April 1, 2011, JEFFREY R. SPANIER negotiated a loan agreement with borrower CW in which CW pledged

1,000,000 shares of common stock that CW held in Cubic Energy, Inc.("QBC"), a publicly traded company listed on the NYSE Amex Equities exchange ("NYSE Amex"), as collateral for a $358,000 loan from ARGYLL.

    r.  On or before April 21, 2011, JEFFREY R. SPANIER caused borrower SV to transfer 1,300,000 shares of common stock that SV held in Elephant Talk Communication, Inc. ("ETAK"), a publicly traded company, as collateral for a $1.9 million loan from ARGYLL.

    s.  On or about May 11, 2011, JEFFREY R. SPANIER received wire transfers in the amount of $158,196 and $65,912 from the sale of ETAK shares pledged by SV.

All in violation of Title 18, United States Code, Section 371.

## Counts 2-7

[18 U.S.C. § 1341 and 2]

Mail Fraud

13. The allegations set forth in paragraphs 1 through 7, and 11 through 12 above are realleged and incorporated by reference as if fully set forth herein.

14. Beginning in at least February 2003 and continuing up to and including October 25, 2013, within the Southern District of California, and elsewhere, defendant JEFFREY R. SPANIER, James T. Miceli (now deceased), and Douglas McClain, Jr., charged elsewhere, with the intent to defraud, devised and intended to devise, a material scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, or omissions of material facts, as described in paragraphs 11 through 12 of Count 1.

Execution of the Material Scheme by Mail

15. On or about the dates set forth below, within the Southern District of California, defendant JEFFREY R. SPANIER, James T. Miceli (now deceased), and Douglas McClain, Jr., charged elsewhere, for the purpose of executing and attempting to execute the aforesaid scheme caused to be placed in a United States post office or other authorized depository for mail matter, or private commercial carrier, items to be delivered by the United States Postal Service or United Parcel Service according to the directions thereon, as set forth below:

| Count | Date | Sender | Addressee | Item |
| --- | --- | --- | --- | --- |
| 2 | 2/25/2010 | SW Beachwood, Ohio | ARGYLL San Diego, CA | Check |
| 3 | 8/26/2010 | SW Beachwood, Ohio | ARGYLL San Diego, CA | Check |
| 4 | 10/7/2010 | KY San Mateo, CA | ARGYLL San Diego, CA | Check |
| 5 | 1/5/2011 | KY San Mateo, CA | ARGYLL San Diego, CA | Check |
| 6 | 2/8/2011 | TP Cottonwood, AZ | ARGYLL San Diego, CA | Check |
| 7 | 3/28/2011 | FB San Diego, CA | Amerifund Boca Raton, FL | Promissory Note |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## Counts 8-18

[Title 18 U.S.C. Sec. 1343 and 2]

Wire Fraud

16. The allegations set forth in paragraphs 1 through 7, and 11 through 12 above are realleged and incorporated by reference as if fully set forth herein.

17. Beginning in at least February 2003 and continuing up to and including October 25, 2013, within the Southern District of California, and elsewhere, defendant JEFFREY R. SPANIER, James T. Miceli (now deceased), and Douglas McClain, Jr., charged elsewhere, devised and intended to devise a material scheme to defraud as to material matters and to obtain money from persons by materially false and fraudulent pretenses, representations, promises, or material omissions of fact, as described in paragraphs 11 through 12 of Count 1.

### Execution of Material Scheme by Wire Communications

18. On or about the dates set forth below, within the Southern District of California, and elsewhere, defendant JEFFREY R. SPANIER, James T. Miceli (now deceased), and Douglas McClain, Jr., charged elsewhere, for the purpose of executing the aforementioned material scheme to defraud and to obtain money and property by false and fraudulent pretenses, representations, promises, did transmit and cause to be transmitted, in interstate and foreign commerce, by means of wire, radio, and television communication, the writings, signs, signals, pictures, and sounds set forth below:

//
//

| Count | Date | Sender | Addressee | Communication |
|---|---|---|---|---|
| 8 | 12/10/2009 | SW ARGYLL BofA Acct. # 0526 San Diego, CA | Amerifund Iberia Bank Acct. # 0663 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $410,977.00 |
| 9 | 4/9/2010 | SW ARGYLL BofA Acct # 3952 San Diego, CA | Amerifund Iberia Bank Acct # 0663 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $425,000 |
| 10 | 5/18/2010 | SW ARGYLL BofA Acct # 3952 San Diego, CA | Amerifund Iberia Bank Acct # 2968 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $402,892.80 |
| 11 | 6/24/2010 | SW ARGYLL BofA Acct # 3952 San Diego, CA | Amerifund Iberia Bank Acct # 2968 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $338,910 |
| 12 | 4/14/2011 | SW ARGYLL BofA Acct # 3952 San Diego, CA | Amerifund Iberia Bank Acct # 2968 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $26,250 |
| 13 | 4/15/2011 | SW ARGYLL BofA Acct # 3952 San Diego, CA | Amerifund Iberia Bank Acct # 2968 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $43,750 |
| 14 | 4/21/2011 | Jeffrey Spanier Delray Beach, FL | SV Brussels, Belgium | e-mail communication regarding transfer of ETAK shares |
| 15 | 5/11/2011 | SW ARGYLL Bank of America Acct # 3952 San Diego, CA | Amerifund Iberia Bank Acct # 2968 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $65,915 |

11

| | | | | |
|---|---|---|---|---|
| 16 | 5/11/2011 | SW ARGYLL Bank of America Acct # 3952 San Diego, CA | Amerifund Iberia Bank Acct # 2968 (formerly Sterling Bank) Delray Beach, FL | Wire transfer in the amount of $158,196.24 |
| 17 | 5/19/2011 | Jeffrey Spanier Delray Beach, FL | DD/Goldman Sachs Chicago, IL | e-mail communication re payoff of SW loan |
| 18 | 6/15/2011 | JEFFREY R. SPANIER Delray Beach, Fl | RS Seattle, WA | e-mail communication re return of stock after FBI search warrant execution |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### Count 19

[15 U.S.C. §§ 78j(b), 78ff and 18 USC 2]

Securities Fraud

19. The allegations set forth in paragraphs 1 through 7, and 11 through 12 above are realleged and incorporated by reference as if fully set forth herein.

20. Beginning in or around February 2003 and continuing up to and including October 25, 2013, within the Southern District of California and elsewhere, defendant JEFFREY R. SPANIER, James T. Miceli (now deceased), and Douglas McClain, Jr., charged elsewhere, did knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, use and employ manipulative and deceptive devices and contrivances in connection with

12

the purchase and sale of securities in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers of securities.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

## Criminal Forfeiture Allegation

[Title 18, United States Code, Sections 981(a)(1)(C), 984 and Title 28, United States Code, Section 2461(c)]

21. Counts 1 through 19 are realleged and incorporated herein by reference as though set forth in full for the purpose of charging criminal forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 984, and Title 28, United States Code, Section 2461(c).

22. As a result of the commission of the foregoing offenses alleged in Counts 1 through 19 of this Indictment, defendant JEFFREY R. SPANIER shall forfeit to the United States any and all property, real and personal, which constitutes or is derived from proceeds traceable to those offenses, including but not limited to:

### Real Property

    a.    The real property located at located at 16013 D'Alene Drive, Delray Beach, Florida 33446, and all appurtenances affixed thereto. The real property is more particularly described as:

13

PROPERTY ID. NO.: 00-42-46-20-16-000-0020

Lot 2, DELRAY TRAINING CENTER P.U.D. - PARCEL B, according to the map or plat thereof, as recorded in Plat Book 86, Page 157, of the Public Records of Palm Beach County, Florida.

### Financial Accounts at Wachovia Bank

b. All monies, funds and credits in Wachovia Bank Account xxxxxxxx6242, in the name of Amerifund Capital Finance, LLC.

c. All monies, funds and credits in Wachovia Bank Account xxxxxxxx7113, in the name of Jeffrey Spanier.

d. All monies, funds and credits in Wachovia Bank Account xxxxxxxx6481, in the name of Regina Spanier.

### Financial Accounts at Iberia Bank

e. All monies, funds and credits in Iberia Bank (formerly Sterling Bank) Account xxxxxx0663, in the name of Amerifund Capital Finance, LLC.

f. All monies, funds and credits in Iberia Bank (formerly Sterling Bank) Account xxxxxx2968, in the name of Amerifund Capital Finance LLC.

23. In the event that any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses described in Counts 1 through 19 of this Indictment, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, third parties;

(3) has been placed beyond the jurisdiction of the courts;

(4) has been substantially diminished in value; or

(5) has been co-mingled with other property which cannot be divided without difficulty; any other property of the defendant, up to the value of $81,000,000 shall be forfeited to the United States pursuant to Title 18, United States Code, Section 982, and Title 21, United States Code, Section 853.

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 984 and Title 28, United States Code, Section 2461(c).

DATED: July 1, 2016.

A TRUE BILL:

*[signature]*

Foreperson

LAURA E. DUFFY
United States Attorney

By: *[signature]*
For MICHAEL G. WHEAT
Assistant U.S. Attorney

15